IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY T. COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-624-SLR |
| | ) |
| WARDEN RAPHAEL WILLIAMS | ) |
| and CORRECTIONAL MEDICAL | ) |
| SYSTEMS, | ) |
| | ) |
| Defendants. | ) |

Harry T. Collins, Pro Se Plaintiff. Wilmington, Delaware.

Erika Yvonne Tross, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Raphael Williams.

James Edward Drnec, Esquire, Balick & Balick, LLC, Wilmington, Delaware. Counsel for Defendant Correctional Medical Services, Inc.

**MEMORANDUM OPINION**

Dated: September $\text{II}$ , 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Harry T. Collins, a former inmate at the Howard R. Young Correctional Institution ("HRYCI"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds pro se. Presently before the court are motions for summary judgment filed by the remaining defendants Warden Raphael Williams ("Williams") and Correctional Medical Services, Inc. ("CMS").[1] (D.I. 90, 91) Also before the court are plaintiff's letter/motion for reconsideration and motion for appointment of counsel. (D.I. 87, 96) For the reasons set forth below, the court will grant the motions for summary judgment and will deny the motions for reconsideration and for appointment of counsel.

## II. BACKGROUND

Plaintiff's original complaint and amendments were dismissed on January 17, 2007, and plaintiff was given leave to amend. (D.I. 56) The amended complaint, filed on February 16, 2007, reinstated defendants Williams and CMS. (D.I. 62) Plaintiff's amended complaint contains numerous allegations regarding the lack or delay of medical treatment and/or improper medical treatment. Plaintiff alleges that Williams, the former warden at the HRYCI, is responsible for "what goes on in his prison," especially when made aware of the situation, and that Williams is responsible according to his job title.

On November 6, 2007, CMS filed a motion to compel or, in the alternative, for summary judgment on the basis that plaintiff failed to respond to its discovery requests and that plaintiff indicated he would not cooperate if deposed. (D.I. 90) Similarly,

_____

[1]Improperly named as Correctional Medical Systems.

Williams filed a motion to dismiss pursuant to Fed. R. Civ. P. 37 or, in the alternative, for summary judgment on the basis that plaintiff failed to cooperate with discovery and because Williams had no personal involvement in the alleged deprivation of plaintiff's constitutional rights. (D.I. 91) CMS joined Williams' motion. (D.I. 92) On February 11, 2008, the court entered an order for the parties to respond to the motions indicating they would be reviewed as ones for summary judgment because they contained matters outside the pleadings. (D.I. 95) Plaintiff was given until March 12, 2008 to file responses. Instead of filing responses, plaintiff filed a motion to appoint counsel.[2] (D.I. 96)

One month later, the court issued a second order for plaintiff to respond to the pending motions for summary judgment by May 13, 2008. (D.I. 100) The court, taking into consideration plaintiff's pro se status, advised plaintiff that he was not expected to respond to the legal arguments, but was expected to respond to the facts presented by defendants. Plaintiff sent a letter to the clerk of the court on May 9, 2008 requesting the case number and names and addresses of the attorneys representing defendants. (D.I. 101) However, he did not file a response to the motions for summary judgment.

## III. SUMMARY JUDGMENT

### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[2]Plaintiff has filed one other motion to appoint counsel, denied on October 16, 2007. (D.I. 69, 85) Pending before the court is a motion for reconsideration of the order denying the motion. (D.I. 87)

-2-

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Indeed, to survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court, however, will not grant the entry of summary

judgment without considering the merits of defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Although the court must construe allegations in favor of a pro se plaintiff, *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), and defendants bear the burden of proving that no genuine issue of material fact exists, plaintiff must nonetheless, at the summary judgment stage, adduce more evidence than bald assertions in the pleadings without any factual support in the record. *See Bornstad v. Honey Brook Twp.,* 211 Fed. Appx. 118, 126 (3d Cir. 2007); *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) ("In reviewing the grant of summary judgment, we must affirm if the record evidence submitted by the non-movant 'is merely colorable or is not significantly probative.'" (internal citation omitted)); *see also Beard v. Banks*, 548 U.S. 521, 530-534 (2006). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. Discussion

### 1. Respondeat Superior/Personal Involvement

Plaintiff alleges that Williams, as the former warden of the HRYCI, is responsible for "what goes on in his prison" and that he knew of the problems at HRYCI because plaintiff sent Williams grievances on a regular basis. (D.I. 62) Williams argues that he is entitled to summary judgment because the claim against him is based upon his

-4-

supervisory position. Williams notes that the amended complaint does not allege that it
was Williams who denied plaintiff access to medical treatment or interfered with his
medical care.

Liability in a § 1983 action cannot be predicated solely on the operation of
respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)
(citations omitted). A plaintiff may set forth a claim for supervisory liability under § 1983
if he "(1) identif[ies] the specific supervisory practice or procedure that the supervisor
failed to employ, and show[s] that (2) the existing custom and practice without the
identified, absent custom or procedure created an unreasonable risk of the ultimate
injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the
supervisor was indifferent to the risk; and (5) the underling's violation resulted from the
supervisor's failure to employ that supervisory practice or procedure." *Brown v.
Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d
1099, 1118 (3d Cir. 1989)). It is not enough for a plaintiff to argue that the alleged
injury would not have occurred if the supervisor had "done more." *Id.* He must identify
specific acts or omissions of the supervisor that evidence deliberate indifference and
establish a link between the act or omission and the ultimate injury. *Id.*

Additionally, participation in the after-the-fact review of a grievance is not enough
to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 Fed. Appx. 923, 925
(3d Cir. 2006) (allegations that prison officials and administrators responded
inappropriately to inmate's later-filed grievances do not establish the involvement of
those officials and administrators in the underlying deprivation). *See also Cole v.*

-5-

*Sobina*, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. 2007); *Ramos v. Pennsylvania Dept. of Corrections*, Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. 2006); *Jefferson v. Wolfe*, Civ. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. 2006); *cf. Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.1997) *aff'd*, 142 F.3d 430 (3d Cir.1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Plaintiff testified during his deposition that he has never met Williams nor had a conversation with him. (D.I. 91, ex. B, 3) He testified that Williams is "supposed to answer any and all questions and debate it and come up with a reasonable decision on what happens in his prison"; "like the president of the United States." (*Id.*) Plaintiff also testified that Williams is responsible for everything that occurs at the HRYCI. (*Id.* at 4) Plaintiff assumes that Williams is involved in all decisions at the HRYCI based upon the "chain of command." (*Id.*)

The record does not support a finding that Williams had personal involvement in plaintiff's medical needs claims. What is clear from plaintiff's testimony is that he named Williams as a defendant based upon his supervisory position. Plaintiff alleges that he wrote grievances and letters to Williams and exhibits to the amended complaint support this claim. Nonetheless, grievances alone are not enough to impute knowledge and liability to Williams. Additionally, rather than prove an affirmative action to violate plaintiff's constitutional rights, the evidence before the court is that Williams responded to plaintiff's concerns and directed him to the individuals who could be of assistance. (D.I. 62, exs.; D.I. 91, ex. C)

The court has reviewed all documents before it and concludes that plaintiff has adduced no evidence that Williams violated his constitutional rights. Therefore, the court will grant Williams' motion for summary judgment.

## 2. Medical Needs

Plaintiff alleges that he did not receive adequate medical treatment during his incarceration and was not provided bottom bunk status. CMS moves for summary judgment on the basis that plaintiff's claim is supported only by his bald assertions and, therefore, he cannot sustain his claims against it. The court notes that plaintiff prematurely ended his deposition and did not provide any testimony regarding any acts of CMS to support his claims. Plaintiff's amended complaint, however, does contain documents regarding his medical needs claims.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical

-7-

personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The records submitted to the court indicate that, rather than ignoring plaintiff's medical complaints, he was provided with care and treatment, albeit not to his liking and perhaps not as quickly as he wished. For example, on August 28, 2005, plaintiff asked for a follow-up medical visit and was told he was scheduled for sick call; on September 5, 2005, plaintiff asked to see a physician and was scheduled to see a physician; on September 27, 2005, plaintiff asked to see a physician, and he was seen on October 3, 2005; on December 7, 2005, he asked to see a physician and was scheduled to see a nurse at sick call; on January 31, 2006, plaintiff asked for arthritis medication and was "scheduled"; on March 7, 2006, plaintiff asked for a new pair of glasses and was scheduled to see a "D.O."; on June 10, 2006, plaintiff sought mental health treatment and was scheduled for an appointment on June 15, 2006, and had been seen for

mental health treatment on June 7, 2006; on June 28, 2006 plaintiff asked for a medical appointment and was scheduled for June 30, 2006; and on July 22, 2006, plaintiff had complaints of pain and was seen by a physician on July 31, 2006 and referred to see another medical provider on August 3, 2006.

Plaintiff also complains that there were delays in receiving his medication, but the medication records he submitted indicate that all delays, save one, were for pain medication and were for a relatively short period. Finally, plaintiff alleges that he was taken off trazodone[3] in December 2005, because it was too expensive, and remained off the drug until his release. The medication records indicate that the medication was not discontinued until January 17, 2006. Moreover, nothing in the record indicates that the medication was discontinued due to costs and the court is not in a position to second-guess a medical decision to discontinue the medication.

Although the court must construe allegations in favor of a pro se plaintiff, and CMS bears the burden of proving that no genuine issue of material fact exists, at the summary judgment stage, plaintiff must produce more evidence than bald assertions to support his claim. The record before the court does not indicate deliberate indifference to plaintiff's medical needs. To the contrary, plaintiff requested, and received, medical treatment. For the above reasons, the court will grant CMS' motion for summary judgment.

_____

[3]Trazodone is primarily used for the treatment of depression. It is sometimes prescribed as a sedative, and it also is used in combination with other drugs for the treatment of panic attacks, aggressive behavior, agoraphobia, and cocaine withdrawal. www.medicinenet.com.

## IV. RULE 37

In the alternative to summary judgment, defendants move for dismissal pursuant to Fed. R. Civ. P. 37(d) based upon plaintiff's refusal to cooperate in the discovery process. Under Rule 37, a court may dismiss an action where a party refuses to cooperate in discovery. "If a party . . . fails . . . to appear for that person's deposition, . . . or to serve its answers, objections, or written response [to interrogatories or a request for production] . . . then the court may [order sanctions] . . . listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d).

"[D]ismissal is a harsh remedy and should be resorted to only in extreme cases," but "[d]istrict court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir.1992); (internal quotations omitted); *see Torres v. Amerada Hess Corp.*, 240 Fed. Appx. 946, 954 (3d Cir. 2007). Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure authorizes a district court to dismiss an action should a party fail to obey an order to provide or permit discovery. *Wallace v. Graphic Management Associates*, 197 Fed. Appx. 138, 141 (3d Cir. 2006). In order to determine whether dismissal is an appropriate sanction, the court weighs six factors as set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), as follows: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than

-10-

dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis*, 747 F.2d at 867; *see also Wallace v. Graphic Management Associates*, 197 Fed. Appx. 138 (3d Cir. 2006).

The record reflects that, subsequent to the filing of the amended complaint, plaintiff failed to respond to any discovery requests propounded upon him. (D.I. 68, 77, 78) When plaintiff failed to respond to Williams' discovery request, counsel advised him that responses were past due and asked for a response by August 24, 2007. (D.I. 91, ex. A) Plaintiff did not respond to the letter or provide discovery. Additionally, plaintiff failed to respond to CMS' motion to compel. (D.I. 90) Notably, at the time of his deposition on November 19, 2007, plaintiff advised counsel for Williams that there were documents that he had not provided to defendants in discovery. (D.I. 91, ex. B, 2-3) Plaintiff stated during his deposition that he was not going to sit for two hours and then chose to end the deposition because he thought the questions asked were "threatening." (*Id.* at 5) When told that Williams' attorney would move for dismissal plaintiff stated, "that's all right. Then I will appeal to a higher court." (*Id.*)

The failure to respond to discovery requests and cooperate during his deposition is directly attributable to plaintiff, as he proceeds pro se. Defendants are prejudiced by plaintiff's failure to comply with discovery and to cooperate during his deposition as they were precluded from completing plaintiff's deposition and fully preparing for trial. Moreover, even when brought to his attention, plaintiff failed to cooperate with discovery. Additionally, it is clear from the deposition transcript that plaintiff's actions were willful when he chose to end the deposition prematurely. Because plaintiff proceeds pro se and in forma pauperis, it is doubtful that monetary sanctions would be

effective. Finally, based upon the record before the court, plaintiff's claim is not
meritorious. For the foregoing reasons, the court finds that the *Poulis* factors weigh in
favor of dismissal as an appropriate sanction. Accordingly, the court finds that
dismissal with prejudice is appropriate under the *Poulis* test and will grant defendants'
motions.

## V. RECONSIDERATION

On October 16, 2007, the court denied plaintiff's motion for appointment of
counsel. (D.I. 85) After receiving notice that defendants would depose him, plaintiff
spoke to counsel for Williams and indicated that it was not in his best interest to answer
any questions and he would refuse to comply with the notice. (D.I. 87) Plaintiff was
told that defense counsel would take action if plaintiff did not attend his deposition.
Plaintiff moves for reconsideration of the order denying his appointed counsel on the
grounds that, because he does not have legal representation, he will have no other
choice but to exercise his Fifth Amendment right against self-incrimination during his
deposition.

The purpose of a motion for reconsideration is to "correct manifest errors of law
or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann,
Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, a court may alter or
amend its judgment if the movant demonstrates at least one of the following: (1) a
change in the controlling law; (2) availability of new evidence not available when
summary judgment was granted; or (3) a need to correct a clear error of law or fact or to
prevent manifest injustice. *See id.*

-12-

Plaintiff's ground for reconsideration, that he needs an attorney to represent him during his deposition, is an insufficient reason for the court to reconsider its previous ruling. Indeed, the record reflects that plaintiff appeared at his deposition and answered several questions before prematurely ending his deposition. At no time did plaintiff invoke his right against self-incrimination. Plaintiff has failed to demonstrate any ground to warrant a reconsideration of the court's October 16, 2007 order denying him appointed counsel. Therefore, the court will deny the motion for reconsideration.

## VI. APPOINTMENT OF COUNSEL

Plaintiff moves for appointment of counsel on the basis that he felt he was interrogated during his deposition and was told that, if he did not cooperate, counsel would move to dismiss the case. He also indicates that he received a paper from the court indicating that he was supposed to file something but, as he is not a lawyer, it is hard for him to follow-through and understand what he is required by law to do.

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be

-13-

appropriate under certain circumstances, after a finding that a plaintiff's claim has
arguable merit in fact and law).

The court takes judicial notice that plaintiff has represented himself in a number
of cases without the assistance of counsel. Moreover, as discussed above, plaintiff's
case was not meritorious. Therefore, the court will deny the motion for appointment of
counsel.

## VII. CONCLUSION

For the reasons stated, the court will grant defendants' motion for summary
judgment and will deny plaintiff's motions for reconsideration and for appointment of
counsel. An appropriate order will issue.